UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JAMES MALEC and RITA MALEC, | ) | Case No. 04 B 17796 |
| | ) | |
| Debtors. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| JAMES MALEC and RITA MALEC, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY CLERK and | ) | Adv. No. 10 A 01455 |
| COOK COUNTY TREASURER | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this matter, the Plaintiffs are Debtors, James Malec and Rita Malec (together "Debtors"), who request a determination that the Defendants, the Cook County Treasurer and the Cook County Clerk (together "the County") violated both the discharge injunction provided by 11 U.S.C. § 524(a) and the automatic stay provided by 11 U.S.C. § 362(a) when the County increased and sold the taxes on the subject property at 4542 Heartland Drive, Richton Park, Illinois after the taxes were provided for, paid through and discharged at the end of their chapter 13 case. A Motion for Summary Judgement was filed by Debtors on October 19, 2010 (Dkt. No. 12, 10 A 01455). In response the Defendants filed an Objection to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment on October 25, 2010 (Dkt. No. 16, 10 A 01455). The Motion for Summary Judgment and the Objection and Cross Motion were withdrawn on October 27, 2010. (Dkts. No.18 & 19, 10 A 01455).

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. § 1409.

## II. FACTS AND BACKGROUND

The Debtors filed for relief under chapter 13 of the United States Bankruptcy Code on May 5, 2004. Debtors listed the Cook County Collector as a secured creditor on schedule D of their bankruptcy schedules as a holder of a lien in the amount of $8,000 for a prepetition real estate tax debt. On July 19, 2004, this court entered an order confirming the Debtors' amended chapter 13 plan. The language of the confirmed plan states at Section B, Paragraph 3:

> The holder of any claim secured by property of the estate, other than a mortgage treated in section C or in Paragraph 3 of section F, shall retain the lien until receipt of all payments provided for by this plan on account of the portion of the claim that is a secured claim under 11 U.S.C. § 506(a) at which time the lien shall terminate and be released by the creditor.

Section E, Paragraph 5(a) of the plan provided that the Cook County Collector's secured claim was to be paid $8,000, without interest, representing payment in full during the plan, regardless of contrary proofs of claim. The County did not object prior to the confirmation of the plan. On July 26, 2004, seven days after confirmation, the County filed Proof of Claim No. 16 in the amount of $11,845.03. Pursuant to the plan, Trustee Thomas Vaughn paid $8,000 to the County. The Debtors received a discharge order on December 11, 2008.

On January 6, 2010, the property taxes on the subject property were sold for the years 2002 and 2003 at a property tax sale.

The Debtors argue that the chapter 13 discharge eliminated their legal obligation to pay any debt that was provided for by the plan. The County argues that the discharge eliminated the Debtors' personal liability only and that an *in rem* debt for real estate taxes remains after the discharge.

## III. DISCUSSION

The material facts are not in dispute. The Debtors brought this adversary proceeding, alleging that the January 6, 2010 sale of the property taxes of the subject property was

held in violation of the discharge injunction under 11 U.S.C. § 524(a) and the automatic stay of 11 U.S.C. § 362(a). Debtors further assert that as of May 5, 2010, the amount to redeem the property taxes had increased from $11,845.03, asserted in the County's claim, to $19,330.22 as a result of the interest assessed on this debt while it was part of the chapter 13 bankruptcy. Debtors allege that this assessment of interest violated the automatic stay while the case was pending pursuant to 11 U.S.C. § 362(k). Debtors also assert that the County is bound by the confirmed plan, citing *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367 (2010) because the County failed to object to the plan. Debtors seek reasonable attorneys' fees and sanctions for the asserted violations.

In response, the County contends that pursuant to Illinois law, the tax lien that Debtors assert was discharged is an *in rem* lien and as such, the discharge in Bankruptcy operates as an injunction against collection of personal liabilities but does not extinguish debts based on *in rem* liens. *In rem* debts may be collected only against the property in issue, not from a debtor's other assets.

### A. Illinois Property Tax Collection

Under Illinois' tax collection system a third party can pay a property owner's delinquent taxes and, if after notice and the passage of a redemption period the owner does not pay the taxes, the third party can acquire the property. *In re Bates*, 270 B.R. 455, 459-60 (Bankr. N.D. Ill. 2001). On January 1 of each year, an *in rem* lien securing payment of property taxes levied in that year attaches to real property in Illinois. The statute provides that the lien is prior and "superior to all other liens and encumbrances." 35 ILCS 200/21-75 (2008). Absent payment, the county can recover the taxes through tax sales, the most common of which is the "annual tax sale." 35 ILCS 200/21-190. After entry by a court of a judgment and order of sale, the county may offer the property for sale at a public auction. Prospective purchasers bid the amount of the delinquent taxes, plus fees and interest. The winning bid is the bid for the least penalty amount. The winning bidder, once the amount due is paid, receives a certificate of purchase entitling the purchaser to reimbursement of the amount paid or to a deed of the property.

The tax purchaser has to pay subsequent taxes to obtain the tax deed. 35 ILCS 200/22-40(a) (2008). Most residential property can be redeemed by the owner for two years and six months after the date of sale. 35 ILCS 200/21-350 (2008). If no redemption takes place, the tax purchaser may petition the state court to order the county clerk to issue a tax deed. 35 ILCS 200/22-30.

**B. Property Taxes are considered a claim under § 101(5) of the Bankruptcy Code**

Pursuant to 11 U.S.C. § 101(5), a "claim" under the Bankruptcy Code is defined as:

(A) a right to repayment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

It has long been established that the Bankruptcy Code employs the "broadest available definition of claim." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). *Pennsylvania Dept. of Public Welfare, et al., v. Davenport*, 495 U.S. 552, 558 (1990) (noting that "the modifying language . . . reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt"). In *Johnson* the Supreme Court discussed whether a debtor can include a mortgage lien in a chapter 13 bankruptcy reorganization plan once the personal obligation secured by the mortgaged property has been discharged in a chapter 7 proceeding. The Supreme Court held "that the mortgage lien in such a circumstance remains a "claim" against the debtor that can be rescheduled under Chapter 13." *Id.* at 80. The County has not argued that its tax lien should be treated differently from a mortgage lender's secured claim for chapter 13 purposes. This broad application operates to promote the purposes of fairly distributing the assets of a debtor's estate to all creditors and allowing the debtor a fresh start. *Bates*, 270 B.R. at 462. Interpreting whether a creditor's surviving right to foreclose on a mortgage can be viewed as a "claim" under section 101(5), the Court in *Johnson* remarked that the court must allow a claim if it is enforceable against either the debtor or his property. *Johnson*, 501 U.S. at 85. Further, the Court inferred that Congress fully expected that an obligation enforceable only against a debtor's property would be a "claim" under the statute. *Id.* at 86.

In the County's Objection to Debtors' Motion for Summary Judgment and Cross Motion for Summary Judgment, as well at the November 10, 2010 trial hearing, the County argued that *Johnson* allows the survival of the *in rem* portion of a claim and therefore, the Debtors' chapter 13 bankruptcy discharge did not extinguish the County's tax lien. (Dkt. No. 16 at Paragraph 5, 10 A 01455). The County misrepresents *Johnson*, as the Supreme Court clearly indicated that it "had no trouble concluding that the mortgage interest . . . is a claim within section 101(5)," and therefore

subject to inclusion in a chapter 13 plan. *Id.* at 83-84. In further support of its position, the County relies on *Dewsnup v. Timm,* 502 U.S. 410 (1992). However, the County's reliance on *Dewsnup* is not helpful to its position. In *Dewsnup*, the Court held that a chapter 7 debtor could not "strip down" a creditor's lien on real property, and that the lien stays with the real property until foreclosure. *Id* at 417. Unlike chapter 7, chapter 13 allows for the modification of the rights of holders of secured claims. *Bates,* 270 B.R. at 465. *See also Ford Motor Credit Co. v. Lee,* 162 B.R. 217, 224 (D. Minn. 1993*)* ("[O]ne of the incentives Chapter 13 provides is to allow the modification of a secured party's rights, an option not available under Chapter 7").

The court notes that 11 U.S.C. § 101(51) defines "security interest" as a lien created by an agreement. The property tax lien at issue herein arose not by agreement, but pursuant to statute. The County's claim may not be secured at all. However, because neither party has briefed or discussed this issue, the court will find that it has been waived. *See also Rankin v. DeSarno,* 89 F.3d 1123, 1127 (3rd Cir. 1996) (Upholding the bankruptcy court's decision that because the tax liens on plaintiff's principal residence arose under state statute, the liens were not security interests for purposes of section 1322 (b)(2)).

Given the courts' consistent and expansive interpretation of "claim," the County's lien is within the ambit of section 101(5)'s definition of a claim and was therefore subject to modification and discharge under the Debtors' chapter 13 bankruptcy. The court also notes that 11 U.S.C. § 102(2) provides that a "claim against a debtor" includes claim against property of the debtor." The County's attempt to split personal and *in rem* liability herein fails. As Judge Black noted in *In re Barton,* 359 B.R. 681, 688 (Bankr. N.D. Ill. 2006) "The conclusion is clear: just as the *in rem* lien of the lender in *Johnson* was a claim that could be modified through chapter 13, the *in rem* lien of Will county is a claim that can be modified through chapter 13." Judge Goldgar reached a similar conclusion in *In re Commings,* 297 B.R. 701 (Bankr. N.D. Ill. 2003) where he held that a tax purchaser to whom a certificate of purchase was issued under Illinois law on its payment of debtors' past due property taxes qualified as a creditor of debtors, with a claim that could be dealt with in the debtors' chapter 13 case. The court acknowledges a contrary holding in *In re Murray,* 276 B.R. 869 (Bankr. N.D. Ill. 2002), but declines to follow the analysis of that decision regarding the scope of 11 U.S.C. § 108, as that issue was not briefed or argued by the parties herein.

### C. The Automatic Stay

The automatic stay under 11 U.S.C. §§ 362(a)(4) and (5) prohibits "any act to create, perfect, or enforce" liens against property of the bankruptcy estate. The Debtors allege, however, that the County's offending acts occurred after the discharge was entered on December 11, 2008. According to 11 U.S.C. § 362(c)(2) the automatic stay continues until the entry of a discharge. Since the complained of conduct occurred after entry of the discharge, when the stay no longer existed, the Plaintiffs' request for sanctions for violation of the automatic stay is denied.

### D. The Provisions of Debtors' Confirmed Plan are Binding under 11 U.S.C. § 1327.

Pursuant to 11 U.S.C. § 1327(a) "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." The recent decision of *United Student Aids Funds, Inc. v. Espinosa* is the controlling authority on this point, thus a brief review of its facts is helpful.

In *Espinosa*, the chapter 13 debtor obtained confirmation of his plan which proposed to repay the principal of his student loan debt, and discharge the accrued interest. 130 S.Ct. 1367, 1374 (2010). However, the language of the debtor's confirmed plan was inconsistent with section 523(a)(8) of the Code, which requires a court to find undue hardship before discharging a student loan, which has to be pursued by a separate adversary proceeding. Despite this inconsistency, the Court held that the court order confirming the proposed plan was a final judgment, and the creditor forfeited its arguments . . . by failing to raise a timely objection before plan confirmation. *Id.* at 1376-80. The Court further noted that the creditor had actual notice of the filing of the debtor's plan, its contents, and the Bankruptcy Court's subsequent confirmation of the plan. *Id.* at 1380.

In *In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993), a chapter 13 plan provided for the payment of an oversecured debt in full without including interest although creditors are entitled to interest on oversecured claims. The creditor did not request interest under 11 U.S.C. § 506(b), which allows interest on oversecured claims. After discharge under section 1328, the creditor's successor sought to collect interest on the oversecured claim. The Seventh Circuit affirmed the district court's views that "[f]ailure to object to the confirmation of a Chapter 13 plan is deemed acceptance . . ." and that "[c]reditors must object to confirmation, appear at hearings, or otherwise put disputes before the bankruptcy court in order to raise objections. If the creditor fails to do so,

the creditor is bound by the Chapter 13 plan." *Id.* at 782.

Here, the County does not dispute that it had notice of both the Debtors' bankruptcy filing and the proposed plan, and that it filed a proof of claim herein a week after the plan was confirmed. The County had sufficient opportunities to object to the treatment of their claim in the proposed plan and to assert its position that the amount of the secured claim was too low. At argument, the County informed the court that the Treasurer's Office is down to 84 people, and remarked on the large bureaucracy within county government. The personnel and administrative issues of the County do not excuse its failure to object to the Debtors' plan; it had an obligation to raise an objection prior to confirmation. Instead, the County remained silent and accepted plan payments for four years. By failing to file an objection the County forfeited its rights and is bound by the terms of the plan.

The July 6, 2004 Amended Chapter 13 Plan (Dkt. No. 19, 04 B 17796) provides at Section B, Paragraph 3, that the holder of any claim secured by property of the estate, other than a mortgage treated in Section C or in paragraph 3 of Section F, shall retain the lien until receipt of all payments provided for by this plan on account of the portion of the claim that is a secured claim under 11 U.S.C. § 506(a), at which time the lien shall terminate and be released by the creditor. Section 506(a) deals with reducing the amount of a secured claim to the value of the collateral; it does not appear to be implicated herein. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 960 (1997) (explaining in detail the operation of section 506(a) in the context of chapter 13 of the Bankruptcy Code).

The Bankruptcy Code provided in 2004 at 11 U.S.C. § 1325(a)(5) regarding plan confirmation requirements that the court shall confirm a plan if:

> (5) with respect to each allowed secured claim provided for by the plan:
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder . . . .[1]

The lien does not survive discharge as the County argues. Once the County received the payments provided by the plan, its lien ceased to exist. Its actions in assessing interest and penalties and selling the taxes at a January 6, 2010 tax sale after entry of the December 11, 2008 discharge were improper as 11 U.S.C. § 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Pursuant to this provision, the County was bound by the confirmed plan.

11 U.S.C. § 1328(a) which governs a chapter 13 discharge, not section 524(a) as suggested by the Debtors, provides in relevant part that "[a]fter completion by the debtor of all payments under the plan, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt . . . ." As such, the $8,000 payments made to the County pursuant to the Debtors' confirmed plan fully satisfied and discharged the County's claim. The tax lien does not survive the bankruptcy case.

**E. The Debtors are Entitled to Sanctions as the Actions of the County Were Wilful.**

The bankruptcy court retains jurisdiction to adjudicate alleged violations of the discharge injunction in chapter 13 cases following the completion of a chapter 13 debtor's payments under a confirmed plan and entry of a discharge order. *In re Loving*, 269 B.R. 655 (Bankr. S.D. Ind. 2001).

Based on the uncontested facts herein, the court finds that the County violated the discharge injunction by assessing interest and penalties and selling the taxes at the January 6, 2010 property tax sale. The County is ordered to reimburse the Debtors for the attorneys' fees they incurred in seeking the relief granted herein.

## IV. CONCLUSION

For the foregoing reasons, the court finds that the County is bound by the confirmed plan. The plan payments totaling $8,000 provided to the County pursuant to the confirmed plan satisfied its claim. The County was required to release its lien when the Debtors completed the payments

---

[1] 11 U.S.C § 1325(a)(5) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8). Section 1325(a)(5)(B)(i) now provides that "the holder of such claim retain the lien securing such claim until the earlier of (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328 . . . .

noted in their confirmed plan. The County violated the discharge injunction of 11 U.S.C. § 1328(a) and the court finds that sanctions are warranted. The Debtors may seek by separate pleading herein reasonable attorneys' fees incurred in pursuing the relief granted herein. That separate pleading shall be filed on or before January 31, 2011. It will be heard by the court on February 15, 2011 at 10:30 a.m. This opinion will serve as findings of fact and conclusions of law. A separate judgment order will be entered.

Dated: January 4, 2011                    ENTERED:   *Jacqueline P. Cox*

                                          ___J. P. Cox_____
                                          **Jacqueline P. Cox**
                                          **United States Bankruptcy Judge**